JASH–LAP REALTY CO., INC., Plaintiff, *v.* HARRY FISH-MAN et al., Tenants of No. 1018 East One Hundred and Sixty-third Street, New York City, Defendants.

(Municipal Court of the City of New York, Borough of The Bronx, First District, May, 1921.)

**Landlord and tenant — method of determining reasonable rent in the city of New York — burden of proof — deductions — Laws of 1920, chap. 944.**

While the price or value of a building and its rental value stand in a certain necessary relation to each other, the ratio between the rent of land and the price thereof varies widely.

In twenty-two actions to recover $125,000 rent for apartments in a building used for dwelling purposes in the city of New York under leases made between April 1, 1920, and September 27, 1920, when chapter 944 of the laws of that year went into effect, and which leases contained no provision making an adjoining playground appurtenant to the demised premises, the defense interposed was that the rent was unjust and unreasonable and that the agreements under which recoveries were sought were oppressive. It appeared on the trial that in 1918 the landlord paid $575,000 for the premises and in addition claimed a liability of $75,000 under an option given to its grantor to purchase back the premises upon payment of that amount. Although the plaintiff claimed that the property is worth $750,000, the cost of reproduction, it further appeared that the gross income of the property amounts to $103,000. The verdict of the jury in favor of defendants was based upon the sum of $688,000, the assessed valuation of the property for the year 1920–1921, but that valuation included vacant adjoining premises assessed for 1921 at $88,000, which, under a former owner, was laid out as a playground and used exclusively by the tenants, but since acquired by plaintiff, has been shut off. Upon denying a motion to set aside the verdicts as contrary to law and the evidence, and upon all the grounds specified in section 999 of the Code of Civil Procedure and section 129 of the Municipal Court Code and for a new trial, *held:*

That the jury had a right to consider that the playground was not a part of the demised premises, thus reducing the value, as assessed, to $600,000, somewhat over six times its rental value.

That the burden was upon plaintiff to reasonably satisfy the jury that it was entitled to allowances for depreciation, repairs, collection, etc., but that the jury were not bound to allow all deductions claimed.

MOTION for a new trial.

Anthony J. Romagna, for plaintiff.

Adlerman & Adlerman, for defendants.

ROBITZEK, J. In this case the jury rendered a verdict in favor of the defendants. A motion was there-

upon made to set aside the verdict as contrary to the law, contrary to the evidence, and upon all of the grounds specified in section 999 of the Code of Civil Procedure and section 129 of the Municipal Court Code. The facts briefly stated are as follows:

The plaintiff, landlord, herein has brought twenty-two actions to recover the rents for the month of October, 1920, from the tenants under written leases for apartments in premises commonly known as " The Hunts Point," the largest six-story apartment house in the world, located at the junction of Simpson street, One Hundred and Sixty-third street and Southern boulevard in the borough of The Bronx, city of New York, the leases having been signed by the several tenants after April 1, 1920, and before chapter 944 of the Laws of 1920 took effect. The tenants interposed a defense that the rent was unjust and unreasonable and that the agreements under which the same are sought to be recovered are oppressive.

The landlord paid for these premises in 1918 $575,000, and claimed a liability in addition thereto of $75,000 created by an option given to the sellers, the Henry Morganthau Company, whereby the sellers could purchase back the premises by paying this amount to the plaintiff. The assessed valuation placed upon these premises for the year 1920–1921 was $688,000, but the plaintiff claims that the real value of these premises is $750,000, which it contends is the cost of reproduction. The only question before the court on this motion is whether or not there was sufficient evidence for the jury to establish the value claimed by the plaintiff. Judge Lehman in the Appellate Term in *Schwartz* v. *Deutsch,* N. Y. L. J., April 21, 1921, held that " It is impossible to fix any definite standard by which the reasonable value of premises are to be determined which would be

Municipal Court of New York, May, 1921. [Vol. 115.

applicable to all cases. * * * The legislature evidently intended that the return upon the investment of the owner of the apartment, or at least upon the value of the premises, should be a material factor in determining what amount will constitute a reasonable rental.''

The price or value of a building and its rental value stand in a certain necessary relation to each other. But, while the relation between the two is a necessary one, being no less direct than that of cause and effect, the ratio between the rent of land and the price of land varies widely. In some countries, where the amount of accumulated capital is large; where a high degree of civil security exists; where the rights of property are respected, and where ownership carries with it social distinction and perhaps political influence, the price may be twenty, twenty-five or even thirty times the annual rental. In this city from the failure of one or all of the conditions a building sells for about six times its rental, but while between the purchase price and the cost of reproduction, it is the latter and not the former which determines its value; it is not true that value is always determined by the cost of reproduction, it may be in regard to any given building at any given time, that the cost of reproducing it would be greater, even far greater than the price at which it sells, and as the cost of reproduction cannot determine the price of this building, the only principle of universal application upon which its value can rest, is that of demand and supply based upon the market price, and as there has been no sale of these premises since 1918, in order to measure the final utility of the building, I must assume that the jury based their verdict upon the assessed valuation.

But this price includes vacant adjoining premises

assessed by the city for 1921 at $88,000, which was laid out as a play-ground and which under the former owner was exclusively used by the tenants, but since acquired by the plaintiff, has been shut off. The leases do not contain a provision making the play-ground appurtenant to the premises demised, and the jury had a right to consider that this play-ground was not a part of the premises leased, thus reducing the value, as assessed, to $600,000.

The testimony shows the gross income from the property amounts to $103,000, and about six times this annual rental would be over $600,000, the assessed value.

The jury were not bound to allow the landlord all the deductions it claimed; the burden being upon the plaintiff to reasonably satisfy the jury from the evidence that it was entitled to allowances such as depreciation, repairs, collection, etc. The rents demanded by the plaintiff, if received, would have given this landlord $125,000, and six times this annual rental would establish a price for these premises of $750,000, or $150,000 more than it is in fact assessed for by the city, exclusive of the playground.

The fact that these tenants entered into written leases for these premises is evidence that the jury could have considered upon the question whether the agreements were actually oppressive and under normal conditions, the tenants and the landlord would be substantially on an equality as to intelligence, enterprise, and freedom of movement; and no prejudice whatever would be created by a landlord demanding the utmost rent which the tenant could and in the result, would pay, as the American mind is imbued with the feeling that a thing is worth what it will bring and that rents are determined solely by competition. The legislature, however, has deter-

Municipal Court of New York, May, 1921.  [Vol. 115.

mined that unusual conditions make it advisable that landlords' freedom to contract be limited, and that the rent they can charge for premises occupied for dwelling purposes shall no longer be regulated solely by competition.

Upon a similar application to set aside a jury's verdict, in the case of *Shapiro* v. *Goldstein,* 113 Misc. Rep. 258, I held that reasonableness of rent is a question of fact, and the question being submitted to the jury for their deliberation, the court could not set aside the results. The jury rendered a verdict in favor of the defendants upon the facts adduced and upon the court's charge as to law, and the court in its discretion would not be justified in setting aside the verdict and granting a new trial unless it is clearly demonstrated that the verdict thus rendered was by mistake, prejudice, passion or bias in the minds of the jury. *Berkowitz* v. *Consolidated Gas Co.,* 134 App. Div. 389-391; *Kingsley* v. *Finch, Pruyn & Co.,* 54 Misc. Rep. 317; *Dambmann* v. *Metropolitan Street Ry. Co.,* 55 id. 60; *Dallin* v. *Mayer,* 122 App. Div. 676, 677; *Wagner* v. *H. Herrmann Lumber Co.,* 121 N. Y. Supp. 607; *McCann* v. *New York & Queens County Ry. Co.,* 73 App. Div. 305; *Lyman* v. *John Anderson & Co.,* 4 id. 124. In the last case cited, it is pointed out wherein the trial court would be justified in setting aside a verdict as rendered by the jury. As I fail to find that the verdict was rendered contrary to the law or contrary to the evidence, the motion for a new trial must therefore be denied.

Motion denied.